## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **DENISE S. HAGY,** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 1:18cv00012 |
| | ) | **REPORT AND RECOMMENDATION** |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of** | ) | By:   PAMELA MEADE SARGENT |
| **Social Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

### *I. Background and Standard of Review*

Plaintiff, Denise S. Hagy, ("Hagy"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 *et seq.* (West 2011 & 2018 Supp.). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). Neither party has requested oral argument. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the

case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4ᵗʰ Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hagy protectively filed her application for DIB on July 22, 2014, alleging disability as of October 2, 2013, based on right hip and lower back pain; a congenital dislocation of the right hip, causing her right leg to be shorter than her left leg; degenerative disc disease; and lifting restrictions. (Record, ("R."), at 18, 153-54, 172.) The claim was denied initially and upon reconsideration. (R. at 72-74, 79-82.) Hagy then requested a hearing before an administrative law judge, ("ALJ"). (R. at 83-84.) The ALJ held a hearing on January 20, 2017, at which Hagy was represented by counsel. (R. at 30-50.)

By decision dated March 16, 2017, the ALJ denied Hagy's claim. (R. at 18-26.) The ALJ found that Hagy met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2017. (R. at 20.) The ALJ found that Hagy has not engaged in substantial gainful activity since October 2, 2013, the alleged onset date of disability.[1] (R. at 20.) The ALJ found that the medical evidence established that Hagy had severe impairments, namely obesity; degenerative disc disease of the lumbar spine; and congenital dislocation of the right hip, but she found that Hagy did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20-21.) The ALJ found that Hagy had the residual functional capacity to perform light[2] work, specifically finding

---

[1] Therefore, Hagy had to show that she was disabled between October 2, 2013, the alleged onset date, and March 16, 2017, the date of the ALJ's decision, in order to be eligible for DIB benefits.

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2018).

that Hagy could frequently lift and carry items weighing 10 pounds and occasionally lift and carry items weighing 20 pounds; that she could sit for six hours in an eight-hour workday; stand or walk four hours in an eight-hour workday; occasionally balance, stoop and climb ramps and stairs; never kneel, crouch, crawl or climb ladders, ropes and scaffolds; and she could occasionally be exposed to temperature extremes, vibrations and hazards, such as unprotected heights and moving machinery. (R. at 21.) The ALJ found that Hagy was capable of performing her past relevant work as a medical transcriptionist. (R. at 24.) In addition, based on Hagy's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Hagy could perform, including jobs as an office helper, a mail clerk and a toll collector. (R. at 25.) Thus, the ALJ concluded that Hagy was not under a disability as defined by the Act, and was not eligible for DIB benefits. (R. at 26.) *See* 20 C.F.R. § 404.1520(f), (g) (2018).

After the ALJ issued her decision, Hagy pursued her administrative appeals, (R. at 147), but the Appeals Council denied her request for review. (R. at 1-5.) Hagy then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2018). This case is before this court on Hagy's motion for summary judgment filed August 23, 2018, and the Commissioner's motion for summary judgment filed September 24, 2018.

## II. Facts & Analysis

Hagy was born in 1962, (R. at 153), which classified her as a "person closely approaching advanced age" at the time of her alleged disability onset date and at

the time of the ALJ's 2017 decision under 20 C.F.R. § 404.1563(d). As of the date
of the ALJ's decision, Hagy was four months and 11 days from qualifying as a
"person of advanced age" under 20 C.F.R. § 404.1563(e). Hagy has a high school
education and training in medical terminology. (R. at 173.) She has past work
experience as a medical transcriptionist. (R. at 40, 173.) Hagy testified that her job
as a medical transcriptionist required her to type medical notes; file the notes in the
charts; carry a stack of charts to the doctor's office, weighing between 10 and 20
pounds; and file the charts, which required a lot of lifting and bending. (R. at 41-
42.)

Patricia McFann, a vocational expert, also was present and testified at
Hagy's hearing. (R. at 44-49.) McFann classified Hagy's past work as a medical
transcriptionist as sedentary[3] and skilled. (R. at 44.) McFann was asked to consider
a hypothetical individual of Hagy's age, education and work history, who could
occasionally lift items weighing up to 20 pounds; frequently lift items weighing up
to 10 pounds; stand and walk four hours in an eight-hour workday; sit at least six
hours in an eight-hour workday; occasionally use foot controls, climb ramps and
stairs, balance and stoop; never climb ladders, ropes or scaffolds, kneel, crouch or
crawl; and who could occasionally be exposed to temperature extremes, vibrations
and hazards. (R. at 44-45.) McFann testified that such an individual could perform
Hagy's past work as a medical transcriptionist, both as performed and as provided
by the Dictionary of Occupational Titles, ("DOT"). (R. at 45.) She also stated that
the individual could perform other work existing in significant numbers in the
national economy, including unskilled, sedentary jobs, such as a document

---

[3] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting
or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is
defined as one which involves sitting, a certain amount of walking and standing is often
necessary in carrying out job duties. Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2018).

preparer; and unskilled, light jobs, such as an office helper, a mail clerk and a toll collector. (R. at 45-46.)

McFann next was asked to consider the same individual, but who could stand three hours in an eight-hour workday; walk three hours in an eight-hour workday; and sit up to four hours in an eight-hour workday. (R. at 47.) She testified that there would be no jobs available that such an individual could perform. (R. at 47.) McFann was asked to consider the first hypothetical individual, but who would be limited to frequent handling, grasping, gripping and feeling. (R. at 47-48.) She stated that this individual could not perform Hagy's past work, but could perform the jobs previously identified. (R. at 48.) McFann stated that all jobs would be eliminated should the individual be off task 15 to 20 percent of the time or if she was absent from work two or more times a month. (R. at 48.) McFann stated that, should the individual be required to use a handheld assistive device, the jobs previously identified would be eliminated. (R. at 49.)

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2018). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2018).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the

claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2011 & 2018 Supp.); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Hagy argues that substantial evidence does not exist to support the ALJ's finding that she was not disabled. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-8.) In particular, Hagy argues that the ALJ erred by failing to give appropriate weight to the effect of pain on her ability to perform substantial gainful activity. (Plaintiff's Brief at 8-12.) Hagy also argues that the ALJ failed to properly evaluate her past relevant work activity. (Plaintiff's Brief at 12-14.) In particular, Hagy contends that the ALJ failed to address the inconsistencies between the vocational expert's testimony concerning her work as a medical transcriptionist as described by the DOT versus how she performed the job. (Plaintiff's Brief at 12-14.) Hagy further argues that the ALJ's

finding was deficient, noting that, if the ALJ had applied a Medical-Vocational Guidelines, ("the Grids"), rule applicable to individuals aged 55 or older, she would have been found disabled. (Plaintiff's Brief at 14-15.) The ALJ did not rely on her finding that Hagy could perform her past relevant work to determine disability but, rather, she proceeded to find that other jobs existed that Hagy could perform. Therefore, this court will consider only whether this finding is supported by substantial evidence. *See* 20 C.F.R. § 404.1520(a)(4).

I first will address Hagy's argument regarding her borderline age. As noted above, the burden rests with the Commissioner at step five of the sequential process to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's residual functional capacity, age, education and work experience. The Commissioner can meet her burden at step five by referencing the Grids found at 20 C.F.R. Part 404, Subpart P, Appendix 2. The Grids contain four age categories: (1) younger person (under age 50); (2) person closely approaching advanced age (age 50-54); person of advanced age (age 55 or older); and (4) person close to retirement (age 60 or older). *See* 20 C.F.R. § 404.1563 (2018). "An ALJ must consider a claimant's age category from the alleged disability onset date until the date the ALJ announces his decision." *Brown v. Colvin,* 2014 WL 1658751, at \*3 (W.D. N.C. Apr. 25, 2014) (citations omitted). In situations where the claimant's age is on the borderline of the higher age category, the Commissioner does not apply the age categories mechanically and may apply the higher category. *See* 20 C.F.R. § 404.1563(b); *see also Pickett v. Astrue*, 895 F. Supp. 2d 720, 724 (E.D. Va. 2012). As the regulations explain:

> If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a

> determination or decision that you are disabled, we will consider
> whether to use the older age category after evaluating the overall
> impact of all the factors of your case.

20 C.F.R. § 404.1563(b). Thus, in borderline age situations, the ALJ must decide whether to apply the higher age category or the claimant's actual age category. *See* 20 C.F.R. § 404.1563(b). The Social Security Administration, through the Hearings, Appeals, and Litigation Law Manual, ("HALLEX"),[4] at Section I-2-2-42, offers guidance for determining whether a borderline age situation exists. To identify borderline age situations when making disability determinations, adjudicators are to apply a two-part test: (1) determine whether the claimant's age is within a few days or a few months of the next higher age category; and (2) determine whether the higher age category would result in a finding of "disabled" instead of "not disabled." If the answer to both questions is "yes," a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the higher age category or the claimant's chronological age. *See* HALLEX I-2-2-42; *see also Yates v. Colvin*, 2015 WL 5158739, at *7 (W.D. Va. Sept. 2, 2015). In addition, HALLEX I-2-2-42 requires that the ALJ explain in the decision that she considered the borderline age situation, state whether she applied the higher age category or the chronological age and note the specific factors she considered.

The ALJ in this case stated Hagy's birthday in the decision and noted that she was 51 years old, which is defined as a person closely approaching advanced age, on the alleged disability onset date. (R. at 25.) The ALJ, however, did not render her decision until March 16, 2017, when Hagy was approximately four months and 11 days from turning 55. Accordingly, Hagy was on the borderline of the age categories between a person closely approaching advanced age and an

---

[4] HALLEX is available at http://www.ssa.gov/OP_Home/hallex.

individual of advanced age. *See Pickett*, 895 F. Supp. 2d at 724 (holding that an individual three months and twenty-four days from an older age category is of a borderline age); *Brown*, 2014 WL 1658751, at *4 (holding that an individual five months and nine days from an older age category is of borderline age); *Campbell v. Colvin*, 2015 WL 8484457, at *3 (M.D. N.C. Dec. 9, 2015) (holding that an individual slightly less than six months from an older age category is of borderline age). Because Hagy was on the borderline between a person closely approaching advanced age and a person of advanced age categories, the ALJ was required to consider whether she should use the older age category in making a determination as to Hagy's case. The ALJ's decision, however, is devoid of any discussion as to Hagy's borderline age or any explanation as to how the ALJ reached the particular age category determination in this case.

There is a split of authority as to the extent to which an ALJ must acknowledge a borderline age category and explain in the decision how he or she reached the determination to apply the particular category. *See Phillips v. Astrue*, 671 F.3d 699, 705-07 (8th Cir. 2012) (summarizing the decisions of the various circuits and holding that the ALJ must provide some explanation of whether a borderline situation warrants moving a claimant to the next higher age category to allow the courts to review whether substantial evidence supports the Commissioner's decision); *Ash v. Colvin*, 2014 WL 1806771, at * 8 (N.D. W. Va. May 7, 2014) (adopting Report and Recommendation) (summarizing circuit split). Although the Fourth Circuit has not addressed the issue, district courts in this Circuit have regularly found that an ALJ must indicate that he or she considered a claimant's borderline age so that the court can conduct meaningful review. *See, e.g., Arnett v. Berryhill*, 2017 WL 1659060, at *4 (W.D. N.C. Apr. 4, 2017); *Tanner v. Colvin*, 2016 WL 626493, at *5-6 (E.D. N.C. Jan. 26, 2016), adopted by 2016 WL 617431 (E.D. N.C. Feb. 16, 2016); *Campbell*, 2015 WL 8484457, at * 3-

4; *Ash*, 2014 WL 1806771, at *8-11; *Brown*, 2014 WL 1658751, at *3-4; *Mitchell v. Astrue*, 2011 WL 5037134, at * 2-3 (W.D. N.C. Oct. 24, 2011); *Pickett*, 895 F. Supp. 2d at 725 (collecting cases). The boilerplate language in a decision stating the claimant's birthday, the claimant's age when he or she filed the application and a citation to 20 C.F.R. § 404.1563 is insufficient to satisfy the ALJ's requirement to consider a borderline age category. *See Brown*, 2014 WL 1658751, at *4; *Mitchell*, 2011 WL 5037134, at *2-3; *but see Williford v. Colvin*, 2015 WL 7730978, at *5 (W.D. N.C. Oct. 28, 2015), adopted by 2015 WL 7730957 (W.D. N.C. Nov. 30, 2015); *Horton v. Colvin*, 2014 WL 1316024, at *3-4 (W.D. N.C. Apr. 1, 2014).

The court agrees with those courts that have held that an ALJ must, at a minimum, acknowledge a claimant's borderline age category and provide sufficient reasoning to allow the district court to conduct meaningful review. Here, it is not clear from the ALJ's decision whether the ALJ even recognized Hagy's borderline age situation at the time of the decision, much less whether she considered applying the next higher age category. Moreover, the boilerplate language in the ALJ's decision that the Commissioner relies upon is insufficient to satisfy the ALJ's obligation to address a claimant's borderline age in a manner that would allow this court to conduct meaningful review of the ALJ's decision. As the Eighth Circuit explained in *Phillips*:

> To this end, we agree with the Commissioner that detailed findings in borderline situations are not necessary. However, it is this court's job to review whether substantial evidence exists to support the Commissioner's decision, and we simply cannot complete this review without some showing as to the Commissioner's consideration of applying the higher age category, which he indisputably is required to do.

671 F.3d at 706 (citations omitted). While the ALJ need not engage in an exhaustive legal discussion as to why she applied one age category over another, the record must, at a minimum, reflect that the ALJ recognized Hagy's borderline age, that the ALJ considered applying the next higher age category and state some basis for why she did not apply that category. The ALJ's decision in this case is devoid of this information.

The ALJ stated that, if Hagy had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Rule 202.14 of the Grids. (R. at 25.) Grid Rule 202.14 states that an individual closely approaching advanced age who has the residual functional capacity to perform light work with a high school education or more is not disabled. *See* Grid Rule 202.14, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2018). However, if the ALJ would have found that Hagy was a person of advanced age, she would have been found disabled under Grid Rule 202.06 if her job skills were not transferable. *See* Grid Rule 202.06, 20 C.F.R. Pt. 404, Subpt. P, App. 2. Grid Rule 202.06 states that an individual of advanced age is disabled if the individual (1) is a high school graduate or more; (2) has skilled or semi-skilled previous work experience, but the skills are not transferable; and (3) has a maximum sustained work capability limited to light work. *See* Grid Rule 202.06, 20 C.F.R. Pt. 404, Subpt. P, App. 2. The ALJ found that Hagy was limited to performing light work; therefore, she was able to perform her past relevant work as a medical transcriptionist. (R. at 21, 24.) Consequently, had the ALJ considered Hagy's age as a "person of advanced age," as opposed to a "person closely approaching advanced age," the Grids would have dictated a finding of "disabled." *See* Grid Rule 202.06, 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Because the record is devoid of any evidence that the ALJ recognized Hagy's borderline age category or considered whether to apply the nearing "person of advanced age" category to Hagy, remand is required in this case. Based on this finding, I will not address Hagy's remaining arguments.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The ALJ did not properly consider Hagy as being of borderline age and whether her chronological age or the next higher age category should be used in determining disability; and

2. Substantial evidence does not exist in the record to support the Commissioner's finding that Hagy was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Hagy's motion for summary judgment; deny the Commissioner's motion for summary judgment; vacate the Commissioner's decision denying benefits; and remand the case to the Commissioner for further consideration.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2018):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    April 12, 2019.

s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE